**Alexandra Rose MICHELL et al., Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**No. C76–1306.**

United States District Court, N. D. Ohio, E. D.

June 28, 1977.

Craig Spangenberg, Spangenberg, Shibley, Traci & Lancione, Cleveland, Ohio, for plaintiffs.

Patrick F. McCartan and John M. Newman, Jr., Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

WILLIAM K. THOMAS, District Judge.

Plaintiffs Alexandra and Steven Michell filed this lawsuit on December 14, 1976 seeking judgment of $400,000 against defendant General Motors Corporation. Plaintiffs' complaint alleges that on March 18, 1974 Alexandra Michell was riding in an automobile with her mother in Ontario, Canada and was strapped into an infant safety seat and restraining system known as a "G.M. Infant Love Seat". Alexandra's mother lost control of the car, and it left the road and crashed into a utility pole. Alexandra was thrown out of the safety seat into contact with a sharp structure on the damaged automobile in such a manner that her right leg was substantially severed below the knee. Plaintiffs allege that the "G.M. Infant Love Seat," manufactured by defendant General Motors, was negligently designed and manufactured; was not a reasonably safe restraining device; and that defendant's negligence and placing of the seat in the channels of commerce were the proximate causes of Alexandra Michell's injuries.

The court has before it a motion to dismiss by defendant General Motors on the ground of *forum non conveniens*. General Motors in substance argues that, although this action is technically within this court's jurisdiction, the court should decline to exercise its jurisdiction and instead let the parties resolve this controversy in a lawsuit already pending in Canada. After consideration of the pleadings, briefs and affidavits submitted, the court—treating defendant's motion as a motion for summary judgment—grants defendant's motion and orders the case dismissed.[1]

1. In deciding to dismiss this case the court has taken into consideration the statement in plaintiffs' brief that:

If it develops during discovery that defendant's employee design engineers . . . and defendant's manufacturing facility are located in another federal district in the United States, this court would retain power to transfer to that other jurisdiction on defendant's motion under § 1404(a)—if defendant elects to file such a motion.

The court rejects this suggestion, however, and concludes that the mere design and manufacture of the infant seat in Michigan or another

■ The ancestral Supreme Court deci-sion on *forum non conveniens* is *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). As Mr. Justice Jackson explained in *Gulf Oil*, "[t]he principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." 330 U.S. at 507, 67 S.Ct. at 842. Congress codified the *Gulf Oil* decision in part in 1948 by its passage of 28 U.S.C. § 1404, section (a) of which provides for the transfer of cases from one United States district court to another upon *forum non conveniens* grounds. The enactment of section 1404 left unaffected the inherent power of federal courts to dismiss lawsuits which cannot be transferred under that section but which nevertheless fall within the general principles of *forum non conveniens*. *Yerostathis v. A. Luisi, Ltd.*, 380 F.2d 377 (2d Cir. 1967); 1A *Moore's Federal Practice* ¶ 0.204 (2d ed. 1974).

Mr. Justice Jackson's opinion in *Gulf Oil* enumerated several factors to be considered by a district court in resolving a question of *forum non conveniens*:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy,

expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial . . .

> Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

330 U.S. at 508–509, 67 S.Ct. at 843. The court will now apply these factors to the case at hand in ruling on defendant's motion to dismiss.[2]

The private interests of none of the litigants in this case recommend the Northern District of Ohio as a trial forum, but rather all such interests point to Ontario, Canada as the appropriate location for trial of this case. Both plaintiffs are residents of Ontario and the infant seat in question was distributed and retailed by Canadian concerns. The accident having occurred in

federal judicial district would not be enough contact with that district to justify transfer. As discussed in the text of this opinion, the relevant factors present in this case strongly recommend Ontario over any United States forum and thus require dismissal rather than transfer of the case.

**2.** The Court of Appeals for this circuit has yet to decide whether a federal district court can dismiss a diversity case for *forum non conveniens* if the forum state law does not recognize that doctrine. See the excellent discussion of

this problem in *Lapides v. Doner*, 248 F.Supp. 883 (E.D.Mich.1965). This court finds it unnecessary to decide this point, however, since it concludes that—despite the paucity of reported cases on point—an Ohio state court could abstain from exercising jurisdiction in this case because of *forum non conveniens* principles. *See State v. Davis*, 1 Ohio App.2d 117, 121–22, 30 Ohio Op.2d 147, 150, 204 N.E.2d 91, 95–96 (1964); *Fellers v. Belau*, 87 Ohio Law Abst. 54, 64, 178 N.E.2d 530, 536 (Ct. of Common Pleas, 1961).

Canada, access to sources of proof would be more restricted if this case were tried in the United States rather than in Canada. The affidavit of John M. Newman, Jr., one of defendant's counsel in this action, states that his investigation of the alleged accident in this case has turned up seven potential witnesses in Canada and that "at least some of them will be necessary, indeed indispensable, witnesses on behalf of the defendant in the trial of the case at bar." These witnesses include an eyewitness to the accident and several people who arrived on the scene shortly after the accident (including one witness "who observed the position of the infant seat and to whom the driver of the automobile spoke concerning the position of the seat and the disposition of the restraining device"). Defendant desires to use these witnesses to attempt to establish that the seat was used improperly by the Michells, that the infant was not actually ejected from the seat, and that (if the infant was in fact ejected from the seat) her injuries would have been equally severe regardless of her ejection.

If the trial of this case were held in the United States, defendant would not be able to compel such persons to appear as witnesses at trial and has no guarantee that they would appear voluntarily. Not only should such witnesses be subject to compulsory process in a Canadian forum, but there are no witnesses whose live testimony the plaintiffs would lose if the trial were held in Ontario (since General Motors represents that it will make any of its employees available as witnesses for the plaintiffs in Canada and the court can conceive of no reason why expert witnesses would not testify in Canada as freely as in the United States). Thus defendant might be denied access to some potentially valuable proof were this case to be tried in the United States, whereas the plaintiffs will have as complete access to witnesses in Canada as in the United States.[3]

A further factor weighing in favor of dismissal of this action is that the substantive law of Ontario will control the trial of this lawsuit—whether the case is tried in Ontario or in the United States. Although the Ohio Supreme Court has abandoned an automatic application of the doctrine of *lex loci delicti* in all tort cases, Ohio courts still apply the substantive law of the place of the injury absent compelling governmental interests to the contrary. *Schiltz v. Meyer*, 29 Ohio St.2d 169, 280 N.E.2d 925 (1972); *Fox v. Morrison Motor Freight, Inc.*, 25 Ohio St.2d 193, 267 N.E.2d 405, *cert. denied* 403 U.S. 931, 91 S.Ct. 2254, 29 L.Ed.2d 710 (1971).[4] Assuming, as the parties' briefs do, that the infant seat in question was designed and manufactured in Michigan, this court can envision neither Ohio nor Michigan state interests calling for application of the substantive law of torts and product liability of a jurisdiction other than Ontario.[5] Since either a United States or a Canadian court would apply the same substantive law in this case (assuming a Canadian court would apply Ontario law), this case should be tried in Ontario before a

---

**3.** Since there apparently is some factual controversy concerning the circumstances of the accident, it is also possible that a court or jury, as finder of the facts, might benefit from a view of the scene of the accident. It would necessarily be much easier for a Canadian rather than for a United States court to take such a view.

**4.** Even if this suit were transferred to another federal district court, the Ohio state choice of law rule would still apply. *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

**5.** If Ontario has a products liability law which is stricter against alleged tortfeasors than Ohio or Michigan law, plaintiffs should receive the benefit of that law. If, however, Ontario does not protect its citizens in this area as fully as have Ohio or Michigan, the Ontario plaintiffs are not entitled to assert the more liberal United States laws as a basis for their suit. In such a case, Michigan and Ohio state interests will still be fully protected, since their citizens retain the protection of these more stringent laws and General Motors will have to conduct all its manufacturing and design operations in light of these laws (rather than designing and producing different infant seats for its different geographic markets). There being no countervailing governmental interests at stake, this case should be governed by the substantive law of Ontario.

court which has a much better grasp of its own law than a court in the United States could hope to have.

Plaintiffs state in their brief that "there is not a single case [cited by the defendant] where the action was dismissed when a foreign national sued a domestic corporation for negligent activity which occurred in the United States." Defendant's reply brief quite properly points out, however, that in making this statement plaintiffs' counsel have overlooked General Motors' citation of *J. F. Pritchard & Co. v. Dow Chemical of Canada, Ltd.*, 462 F.2d 998 (8th Cir. 1972). Although *Pritchard* was not a suit brought by a foreign national, it is even a stronger case for defendant since the Eighth Circuit Court of Appeals (speaking through Mr. Justice Clark) therein affirmed a *forum non conveniens* dismissal against a United States plaintiff despite allegations of faulty design, engineering, and drafting done in the United States. The Court of Appeals decision in *Pritchard* not only confirmed the denial of a domestic forum to a United States citizen, but confirmed such denial despite the fact that the plaintiff had instituted its lawsuit in the United States before the defendant brought suit in Canada. In this suit, to the contrary, foreign rather than domestic plaintiffs seek to invoke the jurisdiction of this court, and plaintiffs themselves filed an action in Canada prior to the institution of this lawsuit.

■ The lawsuit involving these same parties in Ontario concerns the same accident at issue in this lawsuit and, as previously mentioned, the Canadian forum was selected by plaintiffs, rather than defendant, nine months before the institution of this lawsuit. Thus the possibility of inconsistent judgments between the Ontario court and a United States court is present— especially since any United States court would be unfamiliar with the Ontario law to be applied in the case. The pendency of the Canadian action further insures (as is required for the invocation of *forum non conveniens* in a situation such as the present) that a dismissal of the complaint in this court will not leave plaintiffs without

redress. Finally, the crowded condition of the docket of this court and the fact that the Ontario action has been pending for over one year may also mean that the Ontario courts will be able to resolve the parties' dispute more quickly than could this court.

Plaintiffs' action is similar to those in *Del Rio v. Ballenger Corporation*, 391 F.Supp. 1002 (D.S.C.1975) and *Domingo v. States Marine Lines*, 340 F.Supp. 811 (S.D.N.Y. 1972), both of which lawsuits were dismissed by the federal district court, leaving the plaintiffs to pursue their grievances in the courts of a foreign country. As Judge van Pelt Bryan said in the *Domingo* case:

> I see no reason why this Court, with its heavy burdens and responsibilities, should be burdened with cases like these which, from every point of view, should be tried in the courts of the nation where all the relevant events occurred and whose own citizens are primarily involved. Certainly, this district and the Metropolitan area in which it is situated have no conceivable relation to this litigation except for the fact that the defendant happens to be doing business here.

340 F.Supp. at 816.

Likewise, this court sees no reason why it, or any other United States court, should undertake the task of hearing and deciding this lawsuit involving alleged injury to Canadian plaintiffs from a Canadian accident, the trial of which will involve the application of Canadian law and the presentation of Canadian witnesses (whose live testimony cannot be guaranteed in this country).

The complaint is therefore ordered dismissed.

IT IS SO ORDERED.